. The next case is number 2010-1389, Allman Brothers Lumber Company and others against the United States. Whenever you're ready, Mr. Saltman. Whenever you're ready. I'm sorry, Your Honor. Whenever you're ready. Oh, thank you. I beg your Honor's pardon for a moment. May it please the court. The 2006 Softwood Lumber Agreement or the SLA was entered into pursuant to the Trade Act of 1974 as amended. Appellants simply assert that in doing so, the USTA failed to comply with that law. Section 301 of the law provides for the imposition of duties. As such, the CIT has jurisdiction. Allman, you're arguing that the USTR effectively acted under 2411, correct? That's correct, Your Honor. And what specific provision of 2411 is it? I have to get this right. Little c, big d, little 3i? They acted under c. Well, under 2411c, I would say, Your Honor. Yeah, it's little c. Yes. And then under that, big d. Big d, right. And little 3. Are those the ones? Well, they acted under little 2 and little 3. Okay, little 2 and little 3. Now, I understand. Okay, I just want to confirm that. The second thing, I understand that you say the USTR lacked authority under section 2171. That's correct, Your Honor. Now, why do you say that? I mean, you have under 2171c, part one, lists a whole bunch of things that the trade representative is authorized to do. Why do none of those? Because Congress in 1988 chose to take the power that they had delegated to the president to resolve unfair trade practices and re-delegated it to the USTR exclusively. Right. And therefore, in doing so, those agreements, those sections of 2171 are general authority to do negotiations with regard to trade agreements in a broader sense. But the specific ability to enter into trade agreements for the purpose of doing away with unfair trade practices was re-delegated quite specifically by Congress in 1988 from the president to the USTR. And I think the easy way to see that is if one were to look at the way section 301 read prior to the amendments, one will see that the president made the determination and then effectuated the agreement. But you're saying that pursuant to the 88 legislation, it's in that legislation and the thinking behind it that leads to the conclusion that there's no authority under 2171 here. Right. The Congress was, and the legislative history bears this out, was concerned that the president, because he receives input from so many agencies of the government, the State Department, the Defense Department, et cetera, was not being as aggressive on unfair trade practices as Congress wished. And hence, they thought, perhaps a little naively as the commentators say, that they could enhance the enforcement, not the enforcement, they could enhance the protection against unfair trade practices by delegating that authority exclusively to the USTR. And I think that the legislation, and I think that's set forth in our briefing quite substantially. Okay, one, I just have one question and then I'll leave you alone. Let me ask you this. If we were to conclude that the US Trade Representative acted under 2171, okay, and not under 2411, and if we do not agree with your argument with respect to the 1974 Act as a whole, namely that both those provisions are under the Act, do you lose? I believe we do. Okay, then I'll leave you alone. I think that would be an error. No, I understand. I realize that you… An error to leave you alone? Not at all, not at all. No, I realize that you have a different view. I'm just looking at it hypothetically. Your Honor, I'll come down to it in much simpler terms. 1581I says that the CIT has exclusive jurisdiction, excuse me if I read this, over any matter that arises out of any law of the United States providing for duties. The Tariff Act of 1974, as amended, provides for duties. So whether they acted under 2171, maybe I'm changing my answer to your question. No, I'm sorry. Whether they acted under 2171 or 2411, that was both under the Trade Act of 1974. Therefore, the CIT would have jurisdiction over the matter. You mentioned 121, and I apologize. I'll ask one more question on 2171. What if one were to conclude that, in fact, the USTR did act under 2171, but should have acted under 2411, but did not? I would say then the agreement is, the SLA is either void or voidable. Okay. Your Honor, I'll keep my promise and not bother you again unless something arouses my interest. You're not estopped, especially there's a new estoppel case out of this court. Well, in that case, I'll ask you a fundamental question. What we're talking about is whether or not your clients get a share of the settlement. Is that right? It's not a settlement, Your Honor. It's definitely not a settlement. What word should I use? Compensatory trade benefit. Okay. That's what it's all about. Yes. Is it not? Yes. It seems to me that there are a lot of fundamental principles that might be involved here, as well as what I would call the technicalities of which part of the statute the trade representative acted under. That's true, Your Honor. Okay. Yes. I'm sorry. Did I miss a question? No, no. Oh, no, there are. We say that there was a $500 million compensatory trade benefit that the USTR directed Canada to make. Yes. And for reasons that perhaps only the USTR knows, they directed it only to a subset of the industry that was adversely affected. Well, but they measured the return to that subset not by how they might have been affected by the imports, but by their contributions, according to the record. I gather their monetary contributions to all of them. The members of the coalition chose to do that, not the United States government. The United States government said, here is $500 million that we are providing to the members of the coalition. That was the choice of the coalition as to how to allocate it. That's correct, Your Honor. The United States government provided no guidance whatsoever to the members of the coalition as to how to divvy up that money. If the coalition members had decided that they would have divvied that up pro rata to all adversely affected members of the industry, including my clients who supported the petition, and without whose support the petition never could have happened because 60% of the industry is required to support the petition. They supported it intellectually or monetarily? As they were required to do before the petition could be prosecuted. In 2001, when the petition first came along, 60% of the industry had to say that they supported the petition or the ITC could not move forward with it. So my clients were among that 60%. And yet when it came time for the compensatory benefit to be divvied up, the United States ignored them, gave no guidance whatsoever to the members of the coalition who decided, oh, we'll just give it to those members based on their contributions. And as a result, 23% of the compensatory trade benefit went to one company. That's $115 million of the $500 million. The 140 companies who were adversely affected, most of them got zero. Well, that's all very interesting, except that doesn't seem to be before us. Oh, it is before you, Your Honor. It is all in the briefing. All those points are covered clearly in our briefs. How does the distribution of the $500 million affect the question of jurisdiction? It really goes to the question of 301. Was 301 used and was it violated? We thought that it would be important for the court. This was raised below the issue of whether 301 applied and how it applied is intricately involved in the jurisdictional question. Although, I think at base, the question comes... I suppose involved, if you're correct, that the agreement that was executed, entered into, was the result of a longstanding series of events going back to the early... As it was, Your Honor. It replicates the 96 agreement. In that sense, the argument is that the SLA is all tied in with a whole series of things that all relate to trade duties. Well, it relates to a continuing subsidization, recognized subsidization of Canadian lumber. And whenever that plus Canada not imposing export charges come together, then we have an unfair trade practice. And that has existed off and on for the past 20 to 25 years. If we conclude that Judge Eaton was correct, that this was negotiated under 2171 and not under 301, is your client left without any remedy at all? Or is there a cause of action in the district court? I don't think there's a cause of action in the district court. I don't see that there is jurisdiction. I thought you were going to ask if there's a cause of action in the Court of Federal Claims. Or in the Court of Federal Claims. Any remedy at all? I don't believe there is, no, Your Honor. On the theory that it's a political action? No. Oh, no. I just don't see that there is jurisdiction in the... The Trade Act of 1974, we've looked at it, and I don't think that's a money-mandating statute to get us into the Court of Federal Claims. And I don't see the jurisdictional basis in the district court. So I think that the court... It might be a stretch. I think the exclusive jurisdiction here lies with the CIT. And we didn't take that step of bringing it to the CIT without giving this a fair amount of thought. We believe, as I said, it's in the exclusive jurisdiction of the CIT. The... I think I want to come back to the point that I said, is that there really is no dispute that the SLA was entered into pursuant to the Trade Act of 1974. It's just really a question of which section of it. It's one law. 1581I says, if this is a... If it arises out of any law that provides for duties, then the CIT has exclusive jurisdiction. There's no doubt that the Trade Act of 1974 provides for the imposition of duties. As such, on that level, there is no question but that this falls within the jurisdiction of the CIT. I mean, it's rather simple, but I think that it's true. Where we get into the hassle is under which section did the USTR act? But the fact is, she acted under either of our theories. She acted pursuant to the Trade Act of 1974, and that gets us in the door at the CIT. 301, as we argue it, is where the substance of the violation occurs, and we've explained why we believe that's the substantive violation. Let's hear from the government, and we'll save you rebuttal time. Thank you, Your Honor. May it please the Court. The Suffolk Lumber Agreement of 2006 was not negotiated pursuant to 301, and there's no evidence that it was. Moreover, the lumber producer's suggestion that just because the USTR derives her, or now him, she derived her authority when negotiating this from 2171 and the constitutional powers of the President, that somehow the CIT's jurisdiction is flatly wrong, and the Supreme Court squarely addressed this in Kmart when they held, had Congress, quote, wished to grant the CIT jurisdiction over all customs laws and regulations, it could have, quote, expressed such an intent much more clearly and simply by conveying to the specialized court exclusive jurisdiction over all civil actions against the government directly affecting imports. Mr. Silverman, let me ask you, you say that the USTR acted under Section 2171, correct? Yes, Your Honor. Which provision of 2171? Well, 21… Because I'm looking at 2171C. Yes. Is that the provision? Well, Your Honor, 2171C1C provides that the USTR shall have lead responsibility for the conduct of and shall be the chief representative of the United States for international trade negotiations, including all negotiations on any merit considered under the auspices of the WTO commodity and direct investment negotiations. So you're saying you basically hang your hat on 2171C1C. That provides the USTR with the authority to conduct trade negotiations. Moreover, 2171B1 provides the USTR with the rank of Ambassador Extraordinary and Plenipotentiary. I'm sorry, I want to get these down. 2171B1C. And what's the next one? The first was C1C and the second was 2171B1. B1, okay. Those provide the statutory authority for the USTR to act on behalf of the President. What we're talking about here is an executive agreement. It's not a treaty. It doesn't require ratification by the Senate. So those are the provisions you basically look to. Those are the provisions that provide the USTR the authority to act on behalf of the President. The President has the constitutional authority to enter into an executive agreement. In other words, you're saying those are the provisions which gave the USTR the authority to enter into the 2006 SLA. Yes, Your Honor. Those are the provisions that gave the USTR the authority to act on behalf of the President. And that's why you're saying that it's 2171 that was the operative provision here, not 2411. That's correct, Your Honor. Now, let me ask you this. Could the USTR properly have acted under 2411? It's possible. In other words, you're not saying that the USTR was somehow barred from acting under 2411 if she had chosen to do so. If she had chosen to do so and she met the prerequisites, which includes conducting an investigation, publishing notice in the Federal Register, and coming up with a Section 301 provision. What 301 provides— In other words, you're saying she could have acted under 2411 if she had chosen to do so. But if she had so chosen, she would have had to follow the 2412, 2414 requirements. That's correct, Your Honor. In fact, she has used Section 301, or now he has used Section 301, to enforce arbitration decisions, which were handed down by the LCIA, that Canada has violated the USTR. Because what 2411 provides, the 2417 doesn't, is the statutory authority to impose new duties and or tariffs, which 2417 doesn't provide that statutory authority. You mean 2171? Excuse me, yes. Pursuant to Section 301, the USTR, if Canada violates the Salford Lumber Agreement, the USTR, if he conducts an investigation and comes to the correct result, can impose retaliatory duties or can impose duties that enforce the arbitrator's decision in the LCIA. But failing to publish the notice in the Federal Register, as happened here, shouldn't determine which section of the statute it was there might have been a mistake in omitting the publication. That doesn't move it out of 301, or does it, in your view? Well, it wouldn't be proper under 301 without the Federal Register notice. Yes, precisely, but that still wouldn't change whether, in fact, the action was taken under 301, because that would have been the appropriate section otherwise. No, it doesn't change that analysis, Your Honor, but it wasn't a mistake here. And you can see that by the cases of blocking notice that USTR provided to Congress after entering into the SLA that stated that the SLA was entered into pursuant to the USTR's general authority and the Constitution, not Section 301. If it was Section 301 and it just happened to be a mistake, the USTR would have notified Congress that it entered into this pursuant to Section 301 and would have been required to publish Federal Register notice. Is there any indication or do we know why the USTR acted under 2411 in the case of the 1996 SLA but chose not to do so in the case of the 2006 SLA? Yes, certainly, Your Honor. The 1996 SLA was the result of Canada unilaterally withdrawing from the 1986 Memorandum of Understanding between the United States and Canada. The 1986 Memorandum of Understanding is more akin to the SLA of 2006 in that it was not entered into pursuant to Section 301, but rather was an executive agreement between the United States and Canada. Subsequently, the USTR to enforce provisions of the Memorandum of Understanding or Canada's violation of the Memorandum of Understanding, the USTR used Section 301 to impose domestic duties in 1991, briefly in 1986. You're saying the USTR did not use 2411 to enter into the MOA. That's correct, Your Honor. The 1986 MOU, correct. Let me ask you just one question about, I mean, you're urging us to affirm the ruling on jurisdiction, but if you say that if we found there was jurisdiction, there's the political question issue in the case. Yes, Your Honor. Would it not be best if it was necessary to get to that issue to have the CIT in the first instance address it rather than having us on, number one, a non-factual record on the issue, and number two, wouldn't it help us to have the views of the trade court on this question? That's certainly within this court's discretion, Your Honor. The court is not required to address it, but it is a justiciability issue, which if the court found that this was a political question, if this court found, there would be essentially no jurisdiction for the Court of International Trade to rule on any matters here. So it is something this court can address, and we urge the court to address it if it finds that there is statutory jurisdiction. Just to ask me, there might be good reasons if it was necessary to get to have the CIT, mainly because the CIT handles trade issues, and the question here is, what's the interplay between the political question and the trade issues in this particular case, and have a court with expertise look at it in the first instance, and also there may, I don't know, it may be necessary to have, if we got to it, some kind of an evidentiary record on it. There may, in fact, if the court were not to rule on the justiciability aspect solely on the basis of the legal pleadings, and there were a requirement for a factual investigation, yes, then the Court of International Trade would be the proper place to address that in the first instance, Your Honor. But if I may, I'd like to return to a point that was addressed with respect to jurisdiction. The opposing counsel was asked if a district court would properly possess jurisdiction if the trade court doesn't, and in fact, a district court may not possess Article III jurisdiction, but certainly would possess 1331 jurisdiction as a federal question to address this issue, and a perfect example of that is a case called Farr's Stewardship Council, which was recently heard in the Ninth Circuit Court of Appeals, which affirmed the Western District of Seattle in holding that there was not Article III jurisdiction, because there was no addressability. But as you could see, if you look at the district court case in Farr's Stewardship Council v. United States, we did not challenge federal question jurisdiction. What's the cite to that case? Is there a citation, or is it too new? Is that in your brief? It's not in my brief. I'm bringing it up in response to a point that was made. Do you have the cite for it? I don't believe it's cited. You're just saying for the name of the case? It's called Farr's Stewardship Council. Farr's? Farr's Stewardship Council v. United States. It would be helpful if you were to send us the cite this afternoon or whatever. Absolutely, Your Honor. You can get your hands on it. Just send a letter to the clerk's office. Yes, Your Honor. And it's an unpublished Ninth Circuit decision affirming the trade courts, excuse me, the Western District of Washington's published decision holding that there is no addressability, but it did not, the question of federal question jurisdiction was not brought up by the government because we believe the proper place to challenge a treaty and for an executive agreement lies with the district court unless it falls. Is this the only case you know of which discussed the raising these issues in the district court rather than the CIT? This is the only, with respect to the Soffit Lumber Agreement of 2006, it's the only case of which I'm aware. You say it's under 1331. Yes, Your Honor. Federal question jurisdiction. Moreover, as we demonstrated in our brief, Section 301, as I was saying earlier, requires specific actions to be taken by the USTR. If she had wanted to take a Section 301 action, she was certainly entitled to, but she didn't here because she possesses the authority pursuant to Section 2171. There is no evidence in the legislative history or any other evidence for that matter that Congress's amendment of Section 301 withdrew some sort of authority that the USTR possessed pursuant to 2171. The USTR is an ambassador of the United States and possesses the power to negotiate on behalf of the president and there can be no dispute that the president possesses the constitutional power to enter into executive agreements. Now, the lumber producers argument that just because this 2171 is part of the Trade Act of 1974, I'm going to go back to Kmart again and just finish my quote. And again, the Supreme Court held in Kmart at 485 U.S. 188, and this is cited in our brief, is that if Congress had wished the trade court to possess jurisdiction over all trade matters, it could have written, quote, that the trade court possesses jurisdiction over all civil actions against the government, which arise directly from import transactions and which arise under the Tariff Act of 1930 or any one of several specified trade statutes. In rejecting bills that would have implemented such a categorical approach, Congress opted for a scheme that achieved the desired goals of uniformity and clarity by delineating precisely the particular customs matters over which the Court of International Trade would have exclusive jurisdiction. The challenge to an executive agreement is not one of those matters. This executive agreement has no effect on domestic duties. It doesn't require the United States to impose duties. It doesn't require the United States to do anything other than there was a side agreement that the United States would agree to stipulate cases that were pending in the Court of International Trade, the D.C. Circuit, and the NAFTA, and no longer pursue, and the petitioners agreed, to no longer pursue the anti-dumping and countervailing duty petitions. However, all requirements for imposing duties lie on Canada pursuant to the SLA. Canada imposes export duties. The United States does not impose import duties of any kind pursuant to the SLA. It's only if Canada is determined to violate the SLA that the United States would use its, well, the USTR would use its 301 authority to enforce those violations and impose retaliatory duties. That is not what happened here, and for these reasons, we respectfully request that you affirm the decision of the trial court. Thank you, Your Honors. Thank you, Mr. Silverbrand. Yes, Mr. Sultman. Mr. Sultman, we asked Mr. Silverbrand to send us this citation, and we'd be glad to hear from you, take a couple of days, whatever you want to say to criticize that. Thank you, Your Honor. I will have one comment right now. Forest stewardship was filed both in the CIT and in the district court. With regard to jurisdiction, it stayed in the CIT while they pursued it in the district court. If we had gone to the district court, there is no way that we could file for a monetary judgment there. That is strictly TECRAX jurisdiction. And also in this case, though, that the CIT does have jurisdiction to grant money judgments. So again, back to your question, Your Honor. That's why we didn't go to the district court. I will iterate that we say that our case— Let me interrupt for a second. I understand that's why you didn't go there, but the question I had was whether you had a remedy there. I don't believe we have a remedy there. Even if the jurisdictional aspect were resolved in your favor, it doesn't assure any remedy. Is that right? I think that we would have to prove that there was a violation of 301. That's still unresolved. That's correct, Your Honor. Let me say this, though, with regard to the legal authority going back to jurisdiction. In our appendix at A121, we include a statement by the USTR as to how they entered into what authority. And if Your Honors would allow me to quote, this is the day that it went into effect, October 12, 2006. And they say that the agreement was concluded under the office of the United States Trade Representative to negotiate, including pursuant to the USTR's authority under the Trade Act of 1974 as amended. We say it was under the Trade Act of 1974. That's a law that provides for duties, which in turn provides for jurisdiction within the CIT. So I just have two questions. What is the precise violation of 301 or 2411 to which you point? They failed to assure that a compensatory trade benefit was provided to the industry as a whole. The statute itself provides that that compensatory trade benefit should be provided to the economic sector in which the affected industry lay. And we believe that that means, at a minimum, it includes all of the adversely affected members of the industry. That's the requirement of 2411 C1-4. C-4, I'm sorry. Correct, Your Honor. And those benefits must be provided except where it's not feasible to do. $500 million was provided. Obviously, it was feasible here. One question. I just want to pick up on something we discussed with Mr. Silverbrand. Assume for the moment that we agreed with you that the Court of International Trade erred in saying that it lacked jurisdiction. So we said there is jurisdiction. Then there is the political question issue. Now, I was discussing with Mr. Silverbrand the possibility that if we went that route, it would be best to have, in the first instance, the CIT decide that question rather than have this court decide it in the first instance for the reasons I suggested, which may or may not be good ones. But they were just what I threw out. What do you think on that? Your Honor, it certainly would be within your purview to send it back. I think that the cases are clear enough and the facts, the relevant facts, are clear enough for Your Honor to decide the political question issue. One last thing I would suggest, Your Honors, look at the Conoco case, which did say, surely all matters involving international trade are not to be within the jurisdiction of the CIT. But it did have broad residual jurisdiction over matters relating to imports. Thank you, Your Honors. Thank you, Mr. Silverbrand. The case is taken under submission.